IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | **8:13CR107** |
| | | **8:15CR44** |
| v. | | |
| MICHAEL HUYCK, | | **MEMORANDUM AND ORDER** |
| Defendant. | | |

This matter is before on the parties' post-trial briefing, Filing Nos. 418, 419 and 423 in 8:13CR107 and Filing Nos. 36, 37 and 40 in 8:15CR44, and on the defendant's motion for acquittal or for a new trial, Filing No. 424 in 8:13CR107 and Filing No. 41 in 8:15CR44; and on the defendant's motion to vacate, Filing No. 42 in 8:15CR44.[1]  This is a criminal prosecution for child pornography offenses.  The action was tried to a jury from March 2, 2015, to March 6, 2015.

I.      BACKGROUND

Defendant Michael Huyck was charged in two separate indictments, the first was a two-count second superseding indictment in Case No. 8:13CR107 (hereinafter, "the first case") with:  1) receipt/attempted receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) (Count I); and 2) accessing with intent to view child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count II) "[o]n or about between November 16, 2012, and December 2, 2012."  *See United States v. Huyck*, No. 8:13CR107, Filing No. 110, Second Superseding Indictment at 8-10.   Later, he was charged in a second indictment,  Case No. 8:15CR44 ("the second case") with three counts: 1) receipt/attempted

---

[1] Identical motions and briefing has been filed in both cases.  For ease of reference, the court will generally cite to the filings in 8:13CR107.

receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1), "[o]n or about between August 20, 2010, and October 1, 2010" (Count I); 2) possession of child pornography contained on a Hitachi computer hard drive, in violation of 18 U.S.C. § 2252A(a)(5)(B), "on or about between August 20, 2010, and April 9, 2013" (Count II); and 3) possession of child pornography contained on a 2TB G-Technology computer external storage device, in violation of 18 U.S.C. § 2252A(a)(5)(B), "[o]n or about between November 20, 2012, and April 9, 2013" (Count III).  *See United States v. Huyck*, No. 8:15-CR-44, Filing No. 1, Indictment at 1-2.  The cases were consolidated for trial.  *See id.*, Filing No. 7, text minute entry.

The distinctions between the respective charges against the defendant are that a conviction for receiving child pornography under § 2252A(a)(2) carries a five-year statutory minimum sentence, and a maximum sentence of 20 years (for a first offense), whereas a conviction for either possessing or accessing with intent to view pornography[2] under § 2252A(b)(5) has no mandatory minimum sentence and a maximum sentence of 10 years in most circumstances.[3]  *See* 18 U.S.C. § 2252A(b)(1); § 2252A(a)(5)(B).  In the context of the

---

[2] Section 2252A(a)(4) was amended in 2008 to criminalize the action of someone who "knowingly accesses with intent to view" child pornography.  *See* Enhancing the Effective Prosecution of Child Pornography Act of 2007, Pub. L. No. 110–358, § 203, 122 Stat. 4001(2008).  Prior to the amendment the statute criminalized only knowing possession of such images, Subsection (B) of that provision now makes it a crime to "knowingly possess[ ], or knowingly access[ ] with intent to view." 18 U.S.C. § 2252(a)(4)(B).  Courts had held expressed doubt before the amendment about whether "an individual could be found guilty of knowingly possessing child pornography if he viewed such images over the Internet but was ignorant of the fact that his Web browser cached such images." *United States v. Tucker*, 305 F.3d 1193, 1198 (10th Cir. 2002); *see United States v. Stulock*, 308 F.3d 922, 925 (8th Cir. 2002) (noting that the district court acquitted the defendant on one count and "explained that one cannot be guilty of possession for simply having viewed an image on a web site, thereby causing the image to be automatically stored in the browser's cache, without having purposely saved or downloaded the image").

[3] If the images involve prepubescent minors or minors under 12 years of age, the maximum is 20 years, or if the defendant has a prior conviction for a sexual abuse offense, the violation carries as mandatory minimum sentence of 10 years and a maximum of 20 years.  18 U.S.C. § 2252A(b)(2).

two indictments the government essentially charged one mandatory minimum crime with with two lesser included charges.

The evidence adduced at trial showed that the charges in the first case pertained to Huyck's access to and receipt of child pornography from the Tor-network-based Pedoboard website in late 2012.[4]  The charges in the second case related to child pornography found on computer storage devices (a Hitachi hard drive and a G-Technology external storage device or "thumb drive") that were seized in a search of the defendant's home on April 9, 2013.  There was evidence that some equipment had been "wiped" or "cleaned" shortly before the equipment was seized.

At the close of evidence, the court sustained, in part, the defendant's motion for a judgment of acquittal.  The court dismissed Count III of the second case, which related to an image found on the G-Technology thumb drive.  The court found the government had not sustained its burden of proving that the person depicted in the image was under age eighteen.  It found the image depicted a female of indeterminate, though post-pubescent, age.  Accordingly, there was insufficient evidence that the image at issue in Count III was child pornography, rather than adult pornography.

The jury was instructed on the elements of the remaining substantive charges.  *See* Filing No. 405, Initial Jury Instructions, Instruction No. 12 (8:15CR44-Receipt –Essential Elements); Instruction No. 13 (8:13CR107-Receipt-Essential Elements); Instruction No. 15

---

[4] As part of an undercover sting operation, the Pedoboard website was effectively seized and operated by law enforcement from November 16, 2012, to December 2, 2012, and a Network Investigative Technique ("NIT") was installed.  *See* Filing No. 294 Memorandum and Order at 5-6.  Each time a user accessed any page on the website, the NIT sent one or more communications to the user's computer which then delivered data that identified the user's computer to a computer controlled by the FBI.  *Id.* at 5.  There was evidence that the Pedoboard website was accessed from an IP address belonging to Huyck during the time the website was controlled by the FBI, which resulted in the execution of a search warrant at his home on April 9, 2013.  *See id.* at 5-6; Filing No. 319, Transcript of Proceedings before Magistrate Judge Thomas D. Thalken held on October 31, 2014 at 6-10.

(8:13CR107-Access-Essential Elements); Instruction No. 16 (8:15CR44-Possession-Essential Elements).  The jury was also instructed on the elements of attempt with respect to both cases.  *Id.*, Instruction No. 14.[5]  The jury was provided a verdict form that had separate entries for the two theories (receipt and attempted receipt) charged under Count I in each of the cases.[6]

During its deliberations, the jury submitted several questions to the court.[7]  After consultation with counsel, the court provided the following answers to the jury's inquiries:

---

[5] The jury was instructed that the elements of attempt were that on or about the dates charged in the respective indictments, the defendant:

    (1) attempted to receive child pornography;

    (2) knew the materials he intended to receive were child pornography; and

    (3) voluntarily and intentionally carried out some act which was a substantial step toward receiving child pornography.

*See* Filing No. 23, Initial Instructions at 20 (Instruction No. 14).

[6] The verdict form for each of the cases provided as follows:

**COUNT I – RECEIPT OF CHILD PORNOGRAPHY  8:13CR107** [or 8:15CR44]

We, the jury, find the defendant, Michael Huyck,

_____  **Not guilty** of knowingly receiving child pornography as charged in Count I of the indictment.

_____  **Guilty** of knowingly receiving child pornography as charged in Count I of the indictment.

**COUNT I – ATTEMPT TO RECEIVE CHILD PORNOGRAPHY 8:13CR107** [or 8:15CR44]

We, the jury, find the defendant, Michael Huyck,

_____  **Not guilty** of attempting to knowingly receive child pornography as charged in Count I of the indictment.

_____  **Guilty** of attempting to knowingly receive child pornography as charged in Count I of the indictment.

Filing No. 489, Verdict.

[7] Question No. 1 related to the dismissed count and is not relevant to the issues herein.

4

**Question No. 2:**

    Please further define:       - Knowingly received
                                     - Attempted to receive
                                     - Knowingly accessed

    We are especially interested in the differences required for intent and action for these charges.

**Answer:**

    The definition of "knowingly" is found in Instruction #18.  Further, an act is done knowingly if the defendant is aware of the act and does not act or fail to act through ignorance, mistake, or accident.  You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

    The definition of receiving is defined in Instruction #28.[8]

    The elements of attempting to receive are in Instruction #14.  *A substantial step, as used in Instruction #14, must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantial crime. In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.*[9]

    The word "accessed" in the context of Instruction #15 means to obtain or retrieve data.

---

[8] "Receiving" was defined for the jury as follows:

    The ordinary meaning of "receive" is "to knowingly accept," "to take possession or delivery of, or "to take in through the mind or senses."   A person "knowingly receives" child pornography when he intentionally acquires or accepts child pornography on a computer from an outside source.

    A person may be convicted of "knowingly receiving" child pornography if he exercised dominion and control over the images.

    Inadvertent receipt of child pornography is not a violation of the statute.

Filing No. 405, Court's Initial Jury Instructions, Instruction No. 28.  The definition was proposed by the government.  Filing No. 394, Government's Proposed Instructions at 7.

[9] The court overruled defense counsel's objection to the italicized sentences of this paragraph.

Filing No. 27, Jury Question #2 to the Court and Court's Answers to the Jury (emphasis added).

**Question No. 3:**

On Count II of 8:15cr44, is the count that the defendant knowingly had a computer, computer disk, and other material (to with the 160 GB Hitachi hard drive) that had child pornography, or that the defendant would only be guilty if he knowingly possesses child pornography on a computer drive.

In essence, is the defendant guilty even if he doesn't know the content or only if he knows the content.

**Answer:**

See Instruction No. 16.[10]

Filing No. 29, Jury Question #3 to the Court and Court's Answers to the Jury.

**Question No. 4:**

On Instruction 16, Point 1 refers to possession of a computer, computer disk, or other material, then specifically a 160 GB Hitachi hard drive. Are we only to consider the 160 GB Hitachi drive over this period,[11] or can we consider other things like the 2TB G-Technology drive[12] over this time period also.

P.S. We did read Instruction 31[13] in this regard, but still had this question.

---

[10] Instruction No. 16 sets out the elements of Count II (knowing possession of child pornography on the Hitachi drive) in the second case and includes the element that "[t]he defendant knew the depictions were of minors engaging in sexually explicit conduct." Filing No. 23, Initial Jury Instructions, Instruction No. 16. Further, the jury had been instructed, "in the event you hear evidence of more than one such visual depiction, you must agree unanimously as to which visual depictions of minors engaging in sexually explicit conduct the defendant possessed." *Id.*

[11] The period at issue was "on or about between August 20, 2010, and April 9, 2013." Filing No. 23, Initial Jury Instructions, Instruction No. 16.

[12] The image stored on the 2TB G-Technology drive relates to the dismissed count (the image of a female of indeterminate age).

[13] Instruction No. 31 is the "Other Acts Evidence" instruction. *See* Filing No. 24, Closing Instructions at 3; Judicial Committee on Model Jury Instructions for the Eighth Circuit, Manual of Model Criminal Jury Instructions, § 2.08 (2014 ed.).

6

**Answer:**

You may consider all the evidence presented, as instructed per Instruction #31.  However, in order to find the defendant guilty on Count II (Instruction #16), you must find that the defendant knowingly possessed materials he knew were child pornography on the 160 GB Hitachi drive.

Filing No. 31, Jury Question #4 to the Court and Court's Answers to the Jury (footnote added).

After the jury posed Question No. 3, the court initiated a conference with counsel in chambers.  The court discussed whether attempting to receive child pornography should have been instructed as a lesser–included offense of receipt of child pornography and proposed that the verdict form be amended to reflect that the jury should consider attempt only if it found the defendant was not guilty of the receiving charge.  Defense counsel agreed to the proposal, but the government objected, stating that it wanted a jury finding on both the attempt charges and the charges of completed crimes because of concern about potential appellate issues.  In other words, it sought to preserve the attempted receipt charges should the completed receipt charges be reversed on appeal.

In the first case, the jury returned a guilty verdict on Count I under both theories (receipt and attempted receipt) and a guilty verdict on Count II (access with intent to view).  In the second case, the jury found the defendant guilty of receipt under Count I, but acquitted him of attempted receipt.  It also found him guilty of possession under Count II.  After the jury returned its verdict, the court ordered briefing on the issue of an inconsistent verdict on the two theories of Count I for the second case.  The court has reviewed the parties' submissions.

The defendant argues the verdict on the two theories of Count I for the second case is inconsistent.  He contends that "entering a verdict of guilty on knowingly receiving child

pornography, given the acquittal of any attempt to do so, is 'metaphysically impossible' in this case." Filing No. 419, Defendant's Brief at 5.  He requests that the court decline to accept the verdict on that count in the second case and enter judgment only on the possession count.

In its brief, the government focuses mainly on the distinction between receipt or attempted receipt as it relates to the possession charge—that is, on the distinction between the two counts, and not on the inconsistency between the two theories, receipt and attempted receipt, charged within Count I.  The government urges the court to accept the jury's verdict and enter a judgment of conviction on Count I in the second case, but, "[w]ithout conceding in this case that the possession charge in Count II of [the second case] is a lesser-included offense, in an abundance of caution, the Government requests that the Court vacate the jury's verdict on Count II of [the second case] and not impose any sentence regarding that Count." Filing No. 418, Government Brief at 8.  It further requests that the Court "condition vacating Count II of [the second case] upon Count I of that case being upheld on appeal.  Should Count I of [the second case] be reversed, the Eighth Circuit could then either reinstate the jury's verdict on Count II of [the second case] or order this Court to do so and resentence the Defendant." *Id.*

In his motion for a new trial or acquittal, the defendant argues that the government failed to produce sufficient evidence in both cases.  In the first case, he argues that there was insufficient evidence to show that it was Huyck who was in possession of and using a computer that accessed Pedoboard. Filing No. 425, Defendant's Brief at 3.  His argument is based on the contention that only one of the four bits of information obtained via the NIT (an IP address linked to a modem; a session identifier showing what pages were accessed; the operating system ("OS") of the computer accessing the website and the type and

version of the web browser being used to access the internet) can be connected to Huyck—the IP address.  *Id.* at 3.  He argues the government did not prove that Huyck's wireless network was secured in any way from access from anyone outside or inside the residence.  *Id.*  He further argues that "[g]iven the lack of any evidence showing Huyck was in possession of any computer or device which had the OS, Chrome web browser and flash plugin as reported by the NIT, no reasonable jury could have convicted Huyck for receiving and accessing with intent to view as charged in the indictment in [the first case]."  *Id.*

With respect to the second case, the defendant argues that the possession charge was based on images within the "thumbs.db file" (a system-generated hidden file) found in the "My Pictures" folder on the Hitachi seized from Huyck's residence.[14]  He contends that the images could not be viewed without special software and there was no evidence that Huyck was in possession of such software.  *Id.* at 7.  He argues that the "most that a reasonable jury could have concluded in this regard is that at some time in 2010 there were images in that folder that were child pornography," but no evidence establishes when Huyck came into possession of the drive, and no files on the drive link it to any computer in Huyck's possession.  *Id.*  He concedes, however, there was evidence that files had been deleted or "last written" on dates that correspond to the dates alleged in the indictment, but contends there is no evidence that he possessed the drive at that time.  *Id.* at 7.  Accordingly, he argues that no reasonable jury could conclude that Huyck knew the drive contained visual depictions of child pornography without knowing when he came into

_____

[14] The charge asserted in Count I of the second indictment is not limited to a certain device, but the government concedes that the receiving charge in Count I involves images located on the Hitachi hard drive found on the defendant's computer desk.  *See* Filing No. 431, Government's Brief 7.  There is no dispute that the possession count and the receiving count involve the same images.

possession of that hard drive, since viewable images had been deleted from that drive as early as 2010. *See id.* at 8.

In his motion to vacate, the defendant also submits that it would be proper, in ruling on the motion for a judgment of acquittal or new trial, to vacate the conviction on Count I of the second case in order to remedy the potential Double Jeopardy issue, as well as to moot any concerns involving the inconsistency in the jury verdict on that charge.

II.   LAW

A.   Judgment of Acquittal/New Trial Standards

In ruling on a motion for a judgment of acquittal, the court views "'the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict.'" *United States v. Bassett*, 762 F.3d 681, 684 (8th Cir.) *cert. denied*, 135 S. Ct. 882 (2014) (quoting *United States v. Wanna*, 744 F.3d 584, 588 (8th Cir. 2014). Where a party challenges the evidence underlying his conviction, the standard of review is very strict, and the jury's verdict is not to be lightly overturned.   *Bassett*, 762 F.3d at 684. The court may grant a motion for a judgment of acquittal only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.   *Id.*; *see United States v. Wright*, 739 F.3d 1160, 1167 (8th Cir. 2014)

The court may grant a new trial to the defendant "if the interests of justice so require." Fed. R. Crim. P. 33.  District courts have broad discretion in passing upon motions for new trial and such rulings are subject to reversal only for a clear abuse of discretion. *United States v. Wilkins*, 139 F.3d 603, 604 (8th Cir. 1998); *United States v. Brown*, 108 F.3d 863, 866 (8th Cir. 1997).  "'Motions for new trials based on the weight of the evidence generally are disfavored, and the district court's authority to grant a new trial should be

10

exercised sparingly and with caution.'" *United States v. Vore*, 743 F.3d 1175, 1180 (8th Cir. 2014) (quoting *United States v. Johnson*, 474 F.3d 1044, 1050-51 (8th Cir. 2007)).   "A district court may grant a new trial for insufficiency of the evidence 'only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *Vore*, 743 F.3d at 1180 (quoting *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000)); *United States v. Ford*, 726 F.3d 1028, 1035 (8th Cir. 2013) (stating "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand") (quotation omitted).

The authority to grant new trials "should be used sparingly and with caution." *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).

B.   Double Jeopardy

The Double Jeopardy Clause "bars the imposition of "[m]ultiple punishments for the same criminal offense.'" *United States v. Muhlenbruch*, 634 F.3d 987, 1003 (8th Cir. 2011) (quoting *United States v. Roy*, 408 F.3d 484, 491 (8th Cir. 2005)).   In the child pornography context, sentencing a defendant on possession and receipt counts for the same conduct violates the Double Jeopardy Clause.   *Muhlenbruch*, 634 F.3d at 1003 (stating "proof of receiving child pornography under § 2252(a)(2) necessarily includes proof of illegal possession of child pornography under § 2252(a)(4)(B), and Congress did not intend to impose multiplicitous punishment for these offenses"); *United States v. Manning*, 738 F.3d 937, 946 (8th Cir.), *cert. denied*, 135 S. Ct. 149 (2014) (concluding that proof of receiving child pornography necessarily includes proof of possession of child pornography); *Ball v. United States*, 470 U.S. 856, 864 (1985) (stating "that a convicted felon may be prosecuted simultaneously for [two overlapping offenses—receipt and possession of a weapon], however, is not to say that he may be convicted and punished for two offenses"); *see also*

11

*United States v. Dunn*, 777 F.3d 1171, 1176 (10th Cir. 2015); *United States v. Davenport*, 519 F.3d 940, 946–47 (9th Cir. 2008); *United States v. Ehle*, 640 F.3d 689, 695 (6th Cir. 2011); *United States v. Schales*, 546 F.3d 965 (9th Cir. 2008); *United States v. Bobb*, 577 F.3d 1366, 1374 (11th Cir. 2009); *United States v. Miller*, 527 F.3d 54, 72 (3d Cir. 2008); *United States v. Benoit*, 713 F.3d 1, 15 (10th Cir. 2013) (all holding that possession of child pornography is a lesser-included offense of receipt).  The opposite is not necessarily true, however.  *United States v. Watzman*, 486 F.3d 1004, 1009-10 (7th Cir. 2007) (stating "all receivers are possessors but not all possessors are receivers"); *United States v. Miller*, 527 F.3d 54, 63-64 (3d Cir. 2008) (stating "while a person who "knowingly receives" child pornography will necessarily "knowingly possess" child pornography, the obverse is not the case."); *cf. United States v. Wheelock*, 772 F.3d 825, 830-31 (8th Cir. 2014) (finding the distinction between possession and receipt is not meaningless for sentencing purposes "simply because knowing receipt and knowing possession overlap in the usual case," and stating that because "knowing possession is not knowing receipt and each act threatens distinct harms, the imposition of different mandatory minimums is not irrational.").

The issue in a challenge to convictions for both receipt and possession is whether the convictions are based on the same facts.  *Manning*, 738 F.3d at 946; *see United States v. Huether*, 673 F.3d 789, 798 (8th Cir. 2012); *Ball*, 470 U.S. at 864 (while the Government may seek a multiple-count indictment against a felon for violations [two statutes] involving the same weapon where a single act establishes the receipt and possession, the accused may not suffer two convictions or sentences on that indictment).  "'[W]hen an issue of ultimate fact has once been determined by a valid and final judgment' of acquittal, it 'cannot again be litigated' in a second trial for a separate offense."  *Yeager v. United States*, 557 U.S. 110, 119 (2009) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)).  If a critical

issue of ultimate fact is necessarily decided in a defendant's favor in a jury verdict, that verdict protects him from prosecution for any charge for which that fact is an essential element. *Yeager*, 557 U.S. at 123.

C.    Attempt

Crimes of attempt, require (1) an intent to commit the predicate offense and (2) conduct that constitutes a substantial step towards the offense's commission. *United States v. Blue Bird*, 372 F.3d 989, 993 (8th Cir. 2004)*, overruled in part on other grounds by United States v. Pirani,* 406 F.3d 545, 555 (8th Cir. 2005). It is a general rule that every completed crime necessarily includes an attempt to commit it, so that, under a charge of a completed offense, an accused may be convicted of the lesser offense of attempting to commit the crime charged. *United States v. Remigio*, 767 F.2d 730, 733 (10th Cir. 1985). Conviction of a lesser-included offense is an implied acquittal of the greater offense—if the defendant's conviction on the lesser offense is vacated on appeal, he cannot thereafter be tried for the greater offense. *See Illinois v. Vitale*, 447 U.S. 410, 420–421 (1980); *Price v. Georgia*, 398 U.S. 323, 328–329 (1970); *Green v. United States*, 355 U.S. 184, 191 (1957).

While the government is not prohibited from charging a defendant with both a greater and lesser offense, the jury must be instructed that they cannot convict him for both offenses based on the same facts. *Huether*, 673 F.3d at 798-99 (holding that failure to properly instruct the jury in this regard is plain error); *United States v. Dixon*, 507 F.2d 683, 684 (8th Cir. 1974). The jury "must be tasked with separating the evidence in considering the counts separately, and instructed that they may not convict [the defendant] of both counts based on overlapping evidence." *Huether*, 673 F.3d at 798 (noting that "[s]uch an instruction should not be hidden from the jury"). An error in so instructing the jury can be remedied by vacating one of the convictions. *Id.*

13

When a defendant is convicted of both an offense and a lesser-included offense, and Double Jeopardy concerns are at issue, district courts have the discretion to choose which count of conviction to vacate.  *See Ball*, 470 U.S. at 866 (the only remedy consistent with the congressional intent is for the district court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions); *Lanier v. United States*, 220 F.3d 833, 841–42 (7th Cir. 2000) (stating "when the presumption against double punishment requires invalidation of the conviction for either the greater or lesser offense, the choice of which conviction to vacate rests with the sound discretion of the district court"); *United States v. Fischer*, 205 F.3d 967, 970 n. 2 (7th Cir. 2000); *United States v. Hector*, 577 F.3d 1099, 1103–04 (9th Cir. 2009); *United States v. Miller*, 527 F.3d 54, 74 (3d Cir. 2008); *United States v. Schales*, 546 F.3d 965, 977–81 (9th Cir. 2008)).  This is so even "where a defendant's conduct violated two statutes and the prosecutor decided the case warranted the more severe charge."  *Hector*, 577 F.3d at 1103–04 (also stating "neither [the defendant] nor the government has the right to determine which charge will stand").

Ordinarily, however, it is "the conviction carrying the lesser penalty that is vacated." *United States v. Peel*, 595 F.3d 763, 768 (7th Cir. 2010); *Lanier*, 220 F.3d at 842 (noting it would be paradoxical to give the defendant a shorter sentence than he would have received had the government not also charged him with the less serious offense).  Absent unusual circumstances and compelling reasons to vacate the greater offense, a district court "should" exercise its discretion to vacate the lesser-included offense.  *United States v. Maier*, 646 F.3d 1148, 1154 (9th Cir. 2011) ("Such a rule safeguards against cases where a defendant charged with both possession and receipt/distribution of child pornography pleads guilty to both offenses with the hope that he will be sentenced under the lesser crime."); *see United States v. Jose*, 425 F.3d 1237, 1247 (9th Cir. 2005) ("Thus, when a jury

convicts on both the greater and the lesser included offenses, absent a clear indication by Congress that it intended to allow punishment for both offenses, the district court should enter a final judgment of conviction on the greater offense and vacate the conviction on the lesser offense."); *see generally Rutledge v. United States*, 517 U.S. 292, 306 (1996) (stating that it is presumed that a legislature does not intend to impose two punishments where two statutory provisions proscribe the "same offense."); *United States v. Boyd*, 131 F.3d 951, 954-55 (11th Cir. 1997) ("The proper remedy for convictions on both greater and lesser included offenses is to vacate the conviction and the sentence of the lesser included offense."); *United States v. McSwain*, 197 F.3d 472, 483 (10th Cir. 1999); *United States v. Brito*, 136 F.3d 397, 408 (5th Cir.1998); *United States v. Rosario*, 111 F.3d 293, 301 (2d Cir. 1997)(vacating conviction on lesser-included offense); *see also, e.g., United States v. Batchelder*, 442 U.S. 114, 125 (1979) ("Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced.").

"The choice of which count to vacate is fundamentally a sentencing decision. *Maier*, 646 F.3d at 1154. "A district court evaluating a case like [the defendant's] must choose whether the defendant's transgressions warrant a lesser penalty—a shorter statutory term of imprisonment for possession of child pornography—or a greater penalty—a longer statutory term for receipt/distribution." *Id.*; *see also United States v. Peel*, 595 F.3d 763, 768 (7th Cir. 2010) (the decision as to which conviction to vacate "is a matter committed to the trial judge's discretion because functionally it is a decision concerning the length of the defendant's sentence"); *United States v. Chambers*, 944 F.2d 1253, 1269 (6th Cir. 1991) (where "anomaly" in sentencing guidelines produced a longer sentence on a duplicative

lesser included offense than on the greater offense, "we think it is a decision for the trial court" which to vacate).  Under Federal law, the prosecutor's unilateral authority to obtain a dismissal of some counts ends (absent permission of the defendant and the court) at the start of trial.  *See  Hector*, 577 F.3d at 1101–1103. (because defendant did not consent to dismissal of duplicative conviction, judge had discretion following trial to determine which convictions to vacate).

Generally, consistency of a jury's verdicts is not necessary.  *United States v. Finch*, 16 F.3d 228, 230 (8th Cir. 1994); *see United States v. Ford*, 726 F.3d 1028, 1033 (8th Cir. 2013), *cert. denied*, 135 S. Ct. 131 (2014).  A criminal defendant is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts.  *United States v. Powell*, 469 U.S. 57, 62-67 (1984); *Finch*, 16 F.3d at 230.  A perceived inconsistency is not enough to vacate a conviction as long as there is sufficient evidence to support that conviction.  *Powell,* 469 U.S. at 67.

III.   DISCUSSION

The issues with respect to the verdicts in these cases require two levels of analysis. First, the court must determine the distinction in the first case between the receiving/attempt charge and the "accessing with intent to view'" charge and, in the second case, between the receiving charge and the possession charge.  Second, the court must address the arguable inconsistency between the jury's finding of guilty on the substantive offense of receiving child pornography and its acquittal on the lesser-included offense of attempting to receive child pornography in the second case.  The issue of the arguably inconsistent verdict on Count I in the second case is tied to the court's independent review of the sufficiency of the evidence to support the verdict on that count.

With respect to distinguishing the various pornography charges, there is no dispute that, in light of *Muhlenbruch*, Huyck cannot be convicted and sentenced for both receiving child pornography and possessing child pornography for identical images.  The government concedes as much.  The same images—the thumbs.db images found on the Hitachi hard drive—are at issue with respect to the receiving and possessing counts in the second case. The court therefore must dismiss or vacate one of the two counts in that case.  *See, e.g., Maier*, 646 F.3d at 1154.

The first case presents the ordinary scenario where a conviction and sentence for the greater of the two offenses is appropriate.  The court first finds the evidence is sufficient to support the jury's verdict on both counts in the first case.  The government presented evidence that the defendant accessed with intent to view and received child pornography from the Pedoboard site.  The testimony of the government's expert supported that finding. The government proved that the user of the defendant's IP address accessed particular images of child pornography.  Sufficient evidence linked the defendant to that IP address. The IP address was registered to the defendant and his daughter testified that she and the defendant were the only people home at the time.  There was also evidence that the defendant was an IT professional, was familiar with the Tor network and believed he could be anonymous on the Tor network.  He was also in possession of download manager software and links to Tor directory sites and hidden services such as the Onion Pedo Video Archive ("OPVA") on an external storage device seized from his home workstation. Although Windows XP and a Chrome browser (which the NIT had identified accessing the Pedoboard) were not found on the defendant's devices, there was evidence that one of the computer hard drives had been wiped clean just prior to the search.  No evidence supported

the defendant's intimation that an unknown person stole the defendant's wi-fi connection to access the Pedoboard, and any finding to that effect would have been speculative at best.

The court thus finds it appropriate to deny the defendant's motion for a judgment of acquittal or new trial and accept the jury's verdict and enter judgments of conviction on both counts in the first case. The conviction and sentence carrying the lesser penalty is essentially subsumed within the greater penalty. Although the court most likely erred in submitting the theory of attempted receipt to the jury without informing the jury that it could not find the defendant guilty of both attempted receipt and completed receipt, the error is of no consequence in the first case, since the findings are consistent and the attempt count is subsumed within the receipt count.

The issues presented in the second case, involving allegations of a multiplicitous charge, an inconsistent verdict, and a potential Double Jeopardy violation, are more problematic. Possible jury confusion, as reflected in the jury's questions and the arguably inconsistent verdict on attempted and completed receipt charges, factors into the court's analysis of sufficiency of evidence.

Though the government concedes both counts involve the same images, it argues that the two counts involve distinct date ranges, and thus argues that convictions on both counts would not implicate double jeopardy. Notably, Count I charged receipt between August 20, 2010 and October 1, 2010, whereas the charge of possession related to the period of time from August 2010 to April 9, 2013, the date of the execution of the search warrant.[15]

---

[15] Count III (the dismissed count) alleged possession from November 20, 2012—a date on which the defendant allegedly accessed the Pedoboard as charged in the other case, and the date of the execution of the search warrant. There was insufficient evidence to support that Count, however, and the court sustained the defendant's motion for a judgment of acquittal on Count III.

The court finds sufficient evidence supports the possession charge (Count II) in the second case—the images were found on the Hitachi drive when the drive was seized on April 9, 2013.  The drive was found in the defendant's home office that day and a jury could rationally infer that the drive belonged to the defendant and he knowingly possessed the images found thereon.

On the receiving count (Count II) the government was required to prove that the defendant knowingly "received," as defined in the instructions, one or more visual depictions of child pornography between August and October of 2010.  Evidence that relates to that time period is based on the forensic analysis of the 160 GB Hitachi hard drive.  The government's expert testified that the forensic analysis showed the files were active between the charged dates in the Fall of 2010.  Once the court dismissed Count III, the only images at issue were found on the Hitachi drive, that is, the thumbs.db file.  The court agrees with the defendant's contention that there was no evidence that linked the defendant to anything more than possession of the Hitachi drive during the time he was alleged to have received the images.   The images were present on the Hitachi drive when it was seized in 2013, but there is scant evidence as to when or how they got there.   The government has failed to show the defendant received the images using a means or facility of interstate commerce in 2010.  There was evidence that the Internet was the source of the images in that the images contained markings noting the names of Internet websites, but no evidence as to when or by whom they were downloaded from the Internet.  A reasonable jury could have concluded that sometime in 2010 the defendant was in knowing possession of the full sized images of child pornography found on the Hitachi hard drive, but how or

when they were downloaded or by whom is speculative.  The fact that the defendant was in possession of the images does not alone prove knowing receipt.

Establishing that the defendant received pornography from Pedoboard in 2012 does not satisfy the government's burden to show beyond a reasonable doubt that the defendant received pornography in 2010.[16]

The arguably inconsistent verdict further validates the court's conclusion that there is insufficient evidence for a conviction on Count I.  The jury's findings on Count I are inconsistent in that the jury found the defendant committed the substantive offense of receiving child pornography, without having attempted to receive it.  The jury was able to render a consistent verdict on receiving, attempted receipt, and accessing with intent to view in the first case, however.  The anomalous result in the second case illustrates some level of confusion with respect to the related concepts of attempting to receive child pornography and accessing with intent to view child pornography, which, in the context of obtaining child pornography via the internet, could be viewed as essentially the same thing.

Viewing the evidence in the light most favorable to the verdict and accepting all inferences in favor of the verdict, the court finds the evidence is not sufficient to support a finding that the defendant knowingly received child pornography "on or about between August 20, 2010 and October 1, 2010."  The jury found the defendant not guilty of attempting to receive child pornography during that same time period.  In the context of all the evidence presented in the case, no reasonable jury could have found that the defendant knowingly received the charged images on the charged dates and simultaneously be not guilty of attempting to receive the same images on the same dates.  The jury's verdict of

---

[16] As noted, the distinction between a conviction for receipt and a conviction for possession is of some consequence because the former carries a mandatory minimum sentence and the latter does not.

"guilty" to receiving child pornography in the second case could only have been based on speculation.

As noted, the court most likely erred when it submitted the attempt theory of the receiving count to the jury without informing the jury that the jury could not find the defendant guilty of both attempted receipt and completed receipt. The government invited the error by objecting to the court's proposal, during deliberations, to amend the verdict form to provide that the jury was to consider the attempt count only if it found the defendant not guilty on the substantive count. The jury's questions show misunderstanding and/or confusion. The government made a tactical decision to risk the inconsistency and it is now bound by that decision. The jury's finding in the second case that the defendant received the image, but had not attempted to receive it is anomalous.

The court find the defendant's motion for a judgment of acquittal on Count I of the second case should be granted. In light of the court's finding of insufficient evidence, the court need not address the effect of the arguably inconsistent verdict or the potential Double Jeopardy issue. The court's determination renders the defendant's motions for a new trial and motion to vacate moot.[17]

IT IS ORDERED

1.     The defendant's motion for a judgment of acquittal or new trial (Filing No. 424 in 8:13CR107) is denied.

2.     The defendant's motion for a judgment of acquittal or new trial (Filing No. 41 in 8:15CR44) is granted with respect to Count I and denied with respect to Count II).

---

[17] In the context of these two cases, the result is of no practical consequence since the defendant is subject to a five-year mandatory minimum for the conviction in the first case in any event.

3.     The defendant's motion to vacate (Filing No. 42 in 8:15CR44) is denied as moot.

4.     The court accepts the jury's verdict on Counts I and II in Case No. 8:13CR107.

5.     The court will accept the jury's verdict on Count II in Case No. 8:15CR44, but finds insufficient evidence to support the jury's verdict on Count I in Case No. 8:15CR44.

6.     A Judgment in conformity with this Memorandum and Order will be entered at sentencing.

DATED this 10th day of August, 2015.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

22